IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FILED

SEP - 9 2009

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

| | |
|---|---|
| QUINCY TREVOR MOUTON, | ) |
| Plaintiff, | ) |
| v. | ) No. CIV 06-550-RAW-SPS |
| SHELLY GOLD and JASON WILLIAMS, | ) |
| Defendants. | ) |

## OPINION AND ORDER

This action is before the court on the defendants' motion for summary judgment and the court's own motion to consider dismissal of the case as frivolous under 28 U.S.C. § 1915. The court has before it for consideration plaintiff's complaint [Docket #1], the defendants' motion [Docket #35], plaintiff's response to the court's order to show cause why the motion should not be granted [Docket #40], and the defendants' reply [Docket #41].

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections who is incarcerated at Jackie Brannon Correctional Center in McAlester, Oklahoma,[1] brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at the Pontotoc County Jail in Ada, Oklahoma. The defendants are Pontotoc County Jail Administrator Shelly Gold and Day-Shift Jailer Jason Williams.

Plaintiff alleges that while an inmate in the Pontotoc County Jail, he slept on the floor

---

[1] In violation of the court's previous order [Docket #27 at 3] and Local Civil Rule 5.5(a), plaintiff again has failed to advise the court of his current address.

in "filth, waste, mold, mildew, sewage, etc." and in overcrowded conditions that amounted to cruel and unusual punishment. He claims in Count I of his complaint that the jail showers had mold and mildew, and the shower drains were stopped up. The faulty and filthy showers allegedly caused him to contract some type of fungus or ringworm. He asserts the walls, floors, mats, clothing, and blankets also had mold and mildew. In Ground II plaintiff alleges the jail lacked ventilation, exercise, and mental health treatment. He claims in Count III that he was denied religious material and "hygiene," and there was discrimination against African-Americans in the jail. Defendant Shelly Gold allegedly called the African-Americans "chocolate boys."

The record shows that plaintiff was booked into the Pontotoc County Jail on August 25, 2006, on charges of Felonious Possessing a Firearm and Feloniously Pointing a Firearm. He entered a no contest plea and was sentenced on January 18, 2007. He was released from the custody of the Pontotoc County Jail on February 16, 2007, and placed in DOC custody. Plaintiff, therefore, was incarcerated in the Pontotoc County Jail for almost six months.

In *Craig v. Eberly*, 164 F.3d 490 (10th Cir. 1998), the Tenth Circuit Court of Appeals set forth the following analysis to be followed for pretrial detainees in § 1983 claims against jail officials:

> . . . Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, *see Bell v. Wolfish*, 111 U.S. 520, 535 (1979), the Eighth Amendment standard provides the benchmark for such claims. *See McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996). The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299. 1310 (10th Cir. 1998). To hold a jailer personally

2

liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component. *See id.*

The objective component requires that the alleged deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Although what constitutes cruel and unusual punishment under the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society," *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Trop v. Dulles*, 356 U.S. 56, 101 (1958) (plurality opinion)), the Constitution "does not mandate comfortable prisons," *id.* at 349. To the contrary, jail conditions may be "'restrictive and even harsh'" without violating constitutional rights. *Barney*, 143 F.3d at 1311 (quoting *Rhodes*, 452 U.S. at 347). Indeed, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted); *accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This inquiry turns not only on the severity of the alleged deprivations, but also on their duration. *See Barney*, 143 F.3d at 1311 ("An important factor in determining whether the conditions of confinement meet constitutional standards is the length of the incarceration."). Additionally, when, as in this case, a claim involves numerous alleged inhumane conditions, we must bear in mind that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson*, 501 U.S. at 304. However, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

The subjective component requires the jail official to have a "sufficiently culpable state of mind." *Id.* At 297. In the context of prison-conditions claims, the required state of mind is one of "'deliberate indifference' to inmate health and safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03). In other words, the jailer is liable only if he or she "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* At 837. "It is not enough to establish that the official should have known of the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1310

3

(10th Cir. 1998).

*Craig*, 164 F.3d at 495.

Plaintiff stated in his deposition that he was asserting claims against Defendant Shelly Gold because she was the jail administrator, and plaintiff believed she ultimately was responsible for the conditions of the jail. He sued Defendant Jason Williams, because Williams worked as a jailer while plaintiff was incarcerated there.

The defendants allege plaintiff is necessarily suing the defendants in their individual capacities, because they do not have an "official capacity." Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monnell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978). *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). For this to occur, however, the officer must have "final policymaking authority." *Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 615 (5th Cir. 1999) (quoting *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989)). "[W]hether a particular official has 'final policymaking authority' is a question of *state law*." *Jett*, 491 U.S. at 737 (citations omitted) (emphasis in original).

Under Oklahoma law neither of the defendants set the policies or procedures for the Pontotoc County Jail. Instead, the sheriff has charge of the county jail and its prisoners. *See* Okla. Stat. tit. 19, § 513; Okla. Stat. tit. 57, §§ 47, 52. *See also Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) ("Under Oklahoma law, a county sheriff is in charge of the jail and the prisoners therein."). Therefore, the defendants had no official capacity with regard to the Pontotoc County Jail.

With regard to the defendants' liability in their individual capacities, the defendants

4

assert plaintiff has failed to show their personal participation in the alleged constitutional violations. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430 (10th Cir. 1992). It is insufficient to show the defendants had authority over those who allegedly violated his constitutional rights. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Plaintiff must show "a deliberate, intentional act by the [defendants] to violate constitutional rights," which may be satisfied by showing the defendants "personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Id.* at 994-95 (citations omitted). In addition, "liability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by the defendant and not upon mere negligence." *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250 (10th Cir. 1999) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992) (internal citations omitted)).

Plaintiff stated in his deposition that he had to sleep with a blanket on a mattress on the floor for the first three or four weeks he was there, because of the overcrowding. He, however, has failed to show personal participation by either defendant with respect to the alleged filthy, overcrowded conditions of the jail or the alleged lack of ventilation in the facility.

Regarding plaintiff's claim that he contracted a fungal infection on his left toe because of a stopped-up shower drain in November or December of 2006, the court finds he has failed to show the defendants acted with deliberate indifference. Plaintiff alleges he complained to the defendants about the shower daily until it was fixed, and they told him they

were working on it and waiting for someone to repair it. "While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance." *DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001). Here, the court finds the defendants did not ignore the problem with the shower, and it was repaired within seven to nine days from the time it first backed up, which was a reasonable length of time to complete the shower repair. Furthermore, as set forth above, neither of the defendants was the official with the final decision-making authority for repairs to the jail facility.

With respect to plaintiff's claim that Defendant Gold denied him treatment for a fungal infection of his toe, detainees are "entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah,* 119 F.3d 862, 867 (10th Cir. 1997) (citing *Martin v. Bd. Of Comm'rs of County of Pueblo,* 909 F.2d 402, 406 (10th Cir. 1990)). To prevail a plaintiff must show that jailers exhibited deliberate indifference to the detainee's known and serious medical needs. *Id.* at 867.

The record shows that plaintiff submitted a request for medical care on December 16, 2006, stating he thought he had fungus on his big toe. The request indicates it was received by Defendant Gold, and she let plaintiff set a medical appointment for January 2, 2007. Plaintiff submitted a second request for medical care on January 24, 2007, again stating he thought he had a fungus on his toe. The request indicates it was received by Laura Rogers on January 27, 2007, and plaintiff was taken to his doctor's appointment. Because he could not pay for the appointment, however, the doctor refused service. Plaintiff claims the doctor told him he had called the Pontotoc County Jail and was told the jail would not pay for an

6

examination. Plaintiff did not hear this alleged telephone conversation, so he does not know who advised the doctor that the jail would not pay for the visit. Again, plaintiff has failed to demonstrate personal participation by a defendant, which is necessary for liability under § 1983.

The defendants also assert plaintiff has presented no evidence of an actual fungal infection of his toe. He claims this diagnosis was made while he was incarcerated at Oklahoma State Penitentiary, and his toenail was removed. Plaintiff claims the DOC has all his medical records concerning the procedure, but his DOC medical records do not indicate he ever was diagnosed with a fungal infection of his toe. Instead, on March 29, 2007, he was diagnosed with an ingrown, partially avulsed (torn off) toenail on his right big toe. The toenail was removed because of the avulsion, not because of a fungal infection. Subsequent examinations at plaintiff's DOC facility again found no fungus on the toe, and at the time of his deposition, plaintiff had no ongoing medical treatment for his toe.

Plaintiff also alleges he was denied exercise while in the jail. He claims he asked the defendants at least once a week to go outside if the weather was good. During his almost six-month incarceration in the Pontotoc County Jail, he allegedly was allowed outside for exercise and fresh air about two to five times for periods of 1 1/2 hours. He admits he did not suffer any injury or illness from the alleged lack of exercise.

While some courts have held that denial of fresh air and exercise constitutes cruel and unusual punishment under certain circumstances, none has held that such a denial constitutes per se a violation of the Eighth amendment. *Baily v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (citations omitted). *See also Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006)

7

(holding that "a factfinder might conclude that the risk of harm from *three years* of deprivation of any form of outdoor exercise was obvious and that [prison] officials disregarded that risk by keeping Fogle in administrative segregation") (emphasis added)).

The determination of "what constitutes adequate exercise will depend on the circumstances of each case, including the physical characteristics of the cell and jail and the average length of stay of the inmates." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 810 n.8 (10th Cir. 1999) (quoting *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir 1994) (*overruled on other grounds by Tucker v. Graves*, 1997 100884 (10th Cir. 1997) (unpublished opinion)). The court finds the alleged exercise deprivation during plaintiff's incarceration of approximately six months did not violate his constitutional rights. *See Smith v. Harvey County Jail*, 889 F.Supp. 426, 431 (D. Kan. 1995) (holding that six-month stay without outdoor exercise was not unconstitutional).

Plaintiff also alleges Defendant Gold denied him mental health treatment. He claims that on one occasion he asked Defendant Gold if he could see a mental health specialist, and she said she would see about it. Plaintiff admitted in his deposition that he did not suffer any mental health disorders before his incarceration in the Pontotoc County Jail, and he never has been diagnosed with a mental health disorder. He asserts he wanted to talk to a mental health professional because of stress related to family problems.

"Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment...." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). The denial of mental health care, if needed, can amount to deliberate indifference. *Id.* at 577-78. Here, there is no

evidence that plaintiff suffered from a sufficiently serious mental health problem that required treatment. Therefore, he has failed to state a claim for this allegation.

Plaintiff claims he was denied religious materials when he requested a copy of the Qur'an from the defendants, but he never received one. Plaintiff admits he is not a Muslim or a member of any religious faith, and he did not need a Qur'an for any religious study or practice. He simply had a general interest in reading it.

It is well-settled that "[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348. "'The first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997)). Plaintiff has admitted that he requested a Qur'an, not because of his religious beliefs, but because of his general interest in it. Therefore, his constitutional rights were not violated.

Plaintiff alleges he asked the defendants for hygiene items, such as soap, toothpaste, and deodorant, and he was told to have his family provide them. He never was issued hygiene items at the Pontotoc County Jail, and he had to rely on his family for the items. Plaintiff admits that none of the jail inmates received such items, because the jail did not have any to distribute. He also concedes he did not suffer any injury or illness from the alleged denial of hygiene products. "A deprivation of hygiene items without any corresponding injury would not state an Eighth Amendment violation." *Whittington v. Ortiz*, 472 F.3d 804, 808 (10th Cir. 2007). Therefore, plaintiff's claim regarding hygiene items

fails.

Finally, plaintiff complains of racial discrimination by Defendant Gold, evidenced by her allegedly calling him a "chocolate boy" on numerous occasions. This conduct, if true, is unacceptable and unprofessional. It does not, however, constitute a violation of plaintiff's Fourteenth Amendment rights. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal abuse alone is not actionable under § 1983); *see also Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (same) (quoting *Collins*, 603 F.2d at 827); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (use of derogatory racial epithets does not violate Fourteenth Amendment); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (use of racial slurs only violates Fourteenth Amendment if coupled with physical force or other egregious conduct); *cf. Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (verbal abuse does not violate Eighth Amendment).

After careful review the court finds plaintiff's allegations regarding the conditions of his confinement do not individually, or in combination, form the basis of a constitutional violation. *See Wilson*, 501 U.S. at 304. The court takes seriously the jail conditions for prisoners, but plaintiff appears to be a serial complainer and has failed to meet his burden to show he is entitled to relief.

Based on the foregoing reasons the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals has consistently held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn*

*v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** this action is, in all respects, DISMISSED as frivolous.

**IT IS SO ORDERED** this 9th day of September 2009.

**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**